UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Benjamin Mann

v.

Civil No. 1:25-cv-126-SE-TSM
Opinion No. 2026 DNH 140

Camp Fatima, Inc., et al.

O R D E R

When Benjamin Mann was 14 years old, the defendants turned him away from their summer camp after he was diagnosed with Type 1 Diabetes. His amended complaint alleges that, in doing so, the defendants violated Title III of the Americans with Disabilities Act (ADA), § 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), the New Hampshire Law Against Discrimination, N.H. Rev. Stat. Ann. (RSA) § 354-A (NHLAD), and the New Hampshire Civil Rights Act, RSA 354-B (NHCRA). Doc. no. 24. He also brings a claim for intentional or negligent infliction of emotional distress. Id. The defendants are Camp Fatima, Inc. (Camp Fatima); the Roman Catholic Bishop of Manchester, Corporation Sole, Trustee of the Diocese of Manchester Central Fund Trust (CFT); and the Roman Catholic Bishop of Manchester, Corporation Sole (DOM). The defendants move to dismiss in part, arguing various threshold bars to Mann's claims. For the reasons explained below, the court grants the defendants' motion to dismiss without prejudice to Mann's ability to move for leave to amend the complaint to reassert his claim under the Rehabilitation Act if he is able to allege facts, rather than conclusory statements, that any defendant qualified as a "program or activity receiving Federal financial assistance" during the relevant period.

Standard of Review

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013). To test a complaint's sufficiency, the court must employ a two-step approach. First, it must identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678 (alterations omitted)). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations. See id. Only then can the court determine whether the "combined allegations, taken as true, . . . state a plausible, not a merely conceivable, case for relief." Id. (quotation omitted). The court liberally construes Mann's pleadings in light of his pro se status. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

Background

Mann has Type 1 Diabetes, which makes him a person with a disability under the relevant laws. Camp Fatima is a nonprofit camp for boys located in New Hampshire. Camp Fatima is "organized and operate[s] . . . through a sponsorship or other supportive relationship . . . with" CFT and DOM. Mann alleges upon information and belief that the defendants "received

federal funds which were used to operate Camp Fatima's recreational summer camp program in summer, 2019." Doc. no. 24, ¶ 6.

In January 2019, Mann's mother enrolled him in four weeks of overnight summer camp at Camp Fatima. Mann had attended the camp for the previous four summers and planned to bunk with friends from prior years. In June 2019, Mann was diagnosed with Type 1 Diabetes. His mother subsequently communicated with Camp Fatima over approximately seven weeks to ensure that Mann could safely attend "without undue burdens on Camp Fatima's staff in assisting with accommodating [his Type 1 Diabetes] management needs." Doc. no. 24, ¶ 11. Mann's mother also timely submitted the required health forms to the camp. In that paperwork, Mann's endocrinologist requested minimal accommodations to support him with his medication and monitoring needs. Mann's doctors were supportive of him attending the camp.

On July 14, 2019, Mann's family traveled from their home in New York to New Hampshire to drop Mann off at Camp Fatima. Mann, who was 14 at the time, completed his nurse screening and checked into his cabin. As his parents were leaving, however, Camp Fatima's Resident Director chased after them and requested that they meet with the camp's Executive Director. At the meeting, Camp Fatima disenrolled Mann from camp. Staff told Mann that the camp nurse would quit if he attended. Staff refused Mann's request to speak with the nurse. Mann cried, but staff forced him to return to his cabin, repack his belongings, and leave with his family. Mann was "emotionally devastated" and "spent a long summer at home, socially isolated, with no other pre-planned activity options available." Doc. no. 24, ¶ 14. The emotional distress he suffered "carried into his high school and college years where he continues to struggle greatly to regain confidence and an emotional and social foothold in life." Id.

On August 7, 2019, less than a month after the defendants turned Mann away from camp, his mother filed a complaint with the Disability Rights Section of the Civil Rights Division of the U.S. Department of Justice (DOJ) alleging violations of the ADA. Later, the DOJ referred the complaint to its mediation program. The mediation failed to reach a formal settlement because Camp Fatima refused to agree unless the parties removed all references to the ADA and updated policies and procedures from the agreement. In December 2020, Mann applied to return to Camp Fatima as a Counselor in Training (CIT), but he chose not to accept the opportunity because he felt extreme discomfort and unwelcome after the settlement discussions failed.

On July 13, 2022, while Mann was still a minor, his mother filed a civil complaint against the defendants in New York state court. The defendants removed the case to federal court, and the court dismissed the case for lack of personal jurisdiction. Mann turned 18 years old in January 2023. On January 20, 2025, Mann filed a complaint with the Civil Rights Unit at the New Hampshire Department of Justice. Two days later, on January 22, 2025, he filed a complaint in New Hampshire state court alleging violations of the ADA, the Rehabilitation Act, and state law claims. The defendants removed the case to this court. Mann filed the operative amended complaint, and the defendants' motion to dismiss followed.

## Discussion

The defendants move to dismiss Counts I through IV, which allege that they violated Mann's rights under the ADA (Count I), Rehabilitation Act (Count II), NHLAD (Count III), and NHCRA (Count IV).[1] The court addresses their arguments as to each count in turn.

[1] The defendants do not move to dismiss Count V, which alleges a claim for intentional or negligent infliction of emotional distress.

I. ADA

The defendants argue that they cannot be liable for an alleged ADA violation because they fall within the statute's religious exemption. Title III of the ADA protects individuals with disabilities from discrimination in public accommodations. 42 U.S.C. § 12182. The statute expressly exempts "religious organizations or entities controlled by religious organizations." Id. § 12187; see also PGA Tour, Inc. v. Martin, 532 U.S. 661, 689 n.51 (2001); 28 C.F.R. § 36.102(e) (stating that the rule does not apply "to any religious entity"); id. § 36.104 ("Religious entity means a religious organization, including a place of worship."). The defendants point to the statute's implementing regulations to support their argument that they are exempt from the ADA. See 28 C.F.R. § Pt. 36, App. C. The regulations note that "exemption of religious organizations and religious entities controlled by religious organizations is very broad, encompassing a wide variety of situations." Id. A religious organization is exempt even when it "carries out activities that would otherwise make it a public accommodation." Id. The regulations note that "[m]any religious organizations . . . use lay boards and other secular or corporate mechanisms to operate schools and an array of social services," which does not eliminate the exemption. Id. The question is whether the "religious organization controls the operations . . . of the service or whether the . . . service is itself a religious organization." Id.

Aside from the regulations, caselaw provides minimal guidance on the parameters of the religious exemption. The few courts that have addressed the question have found the defendant entities exempt. See Marshall v. Sisters of Holy Fam. of Nazareth, 399 F. Supp. 2d 597, 606 (E.D. Pa. 2005) (finding a self-described Catholic school exempt because it had a religious mission, taught Bible study, was operated by nuns, was listed in the "Official Catholic

Directory," and had nonprofit tax exemption); White v. Denver Seminary, 157 F. Supp. 2d 1171, 1174 (D. Colo. 2001) (finding a seminary school to be a "pervasively religious organization"); Tassinari v. Salvation Army Nat'l Corp., 610 F. Supp. 3d 343, 360 (D. Mass. 2022) (finding that the Salvation Army, as a church, was a religious organization under the ADA).

This dearth of caselaw may exist because courts tend to believe that "[d]etermining an organization's religious status 'is often a straightforward exercise as many organizations have been deemed clearly religious, such as churches or synagogues.'" Tassinari, 610 F. Supp. 3d at 360 (quoting Defiore v. City Rescue Mission of New Castle, 995 F. Supp. 2d 413, 416 (W.D. Pa. 2013)). In Rose v. Cahee, the court found that a nonprofit healthcare corporation was controlled by an organization that was "indisputably" religious. 727 F. Supp. 2d 728, 747 (E.D. Wis. 2010). The religious organization sponsored the defendant corporation and had "a primary role in [its] corporate governance structure," so it controlled the corporation notwithstanding the fact that it might "not be involved in the daily operation and decision-making of [the defendant's] individual healthcare facilities." Id. at 747-48.

Here, the court agrees with the defendants that by Mann's "own admissions," each defendant is an entity controlled by a religious organization. Doc. no. 25-1 at 6. Mann primarily objects that dismissal is improper at this stage because determining that question requires more factual development. Doc. no. 26-1 at 8-9. Mann's argument, however, fails on the face of his own allegations. DOM, a corporation sole, is clearly a religious organization because it exists to act as the legal entity through which the Roman Catholic Diocese of Manchester operates. See Roman Cath. Bishop of Springfield v. City of Springfield, 724 F.3d 78, 84 (1st Cir. 2013). In other words, it is the legal manifestation of church. Mann alleges that CFT "is an irrevocable charitable trust . . . created to hold deposits for the benefit of, and loan funds to . . . entities

within the Roman Catholic Diocese of Manchester," and that DOM is the trustee of CFT. Doc. no. 24 at 3-4. Because DOM, a religious organization, is the trustee of CFT, CFT is an entity controlled by a religious organization. See Rose, 727 F. Supp. 2d at 747-48. Finally, Mann alleges that Camp Fatima operates "through a sponsorship or other supportive relationship . . . with the other two . . . defendants." Doc. no. 24 at 3.[2] Thus, Man has alleged that Camp Fatima is sponsored by, or controlled by, DOM, a religious organization, and CFT, an entity controlled by that same religious organization.

In the face of these allegations, the court can only conclude that each of the defendants is either a religious organization or an entity controlled by a religious organization. Mann's arguments to the contrary are misplaced. He argues that the regulations state that a private entity that rents a religious organization's facilities to operate a place of public accommodation is not exempt, but he overlooks that his own allegations establish that Camp Fatima is controlled by DOM. Further, the defendants' assertion that CFT is a private entity does not undermine the conclusion that CFT, even though it is itself a private entity, is controlled by DOM, a religious entity. As such, the court concludes that the defendants are exempt from liability under Title III of the ADA, and Mann's Title III claims are accordingly dismissed. [3]

---

[2] The court notes that Mann's original complaint alleged that Camp Fatima is "organized under the United States Conference of Catholic Bishops and specifically operates through sponsorship by" DOM. Doc. no. 1-1 at 10-11. His amended complaint, filed in response to the defendants' motion to dismiss the original complaint, inexplicably omits this allegation.

[3] Mann's objection suggests that he is also bringing a claim under Title I of the ADA in relation to his application to attend Camp Fatima as a CIT. See doc. no. 26-1 at 8. His amended complaint does not allege a violation of Title I or mention his CIT application in reference to his ADA claim. It also alleges only that he completed an application to become a CIT, but "ultimately chose not to accept this opportunity" because the DOJ-sponsored mediation broke down. Doc. no. 24, ¶ 17. It is further irrelevant that the DOJ referred Mann's civil rights complaint to its mediation program, as that action was not an adjudication on the merits and does not bind the court.

II. Rehabilitation Act

Section 504 of the Rehabilitation Act prohibits "any program or activity receiving Federal financial assistance" from discriminating against an "otherwise qualified individual with a disability . . . solely by reason of . . . his disability." 29 U.S.C. § 794; see also Consol. Rail Corp. v. Darrone, 465 U.S. 624, 635 (1984). Although the First Circuit has not directly weighed in, it has implied and other courts have found that a defendant is only liable under § 504 for discrimination that occurred during the period the defendant received federal financial assistance. Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 129 (1st Cir. 2003) (remarking that a defendant "does not dispute that it received federal funds at all relevant times"); Taibi v. Borough of Slatington, No. CV 18-00385, 2018 WL 6173366, at *5 (E.D. Pa. Nov. 26, 2018) (collecting cases).

Here, Mann alleges "upon information and belief" that, at all times relevant to his claims, the defendants "received federal funds which were used to operate Camp Fatima's recreational summer camp program in summer, 2019." Doc. no. 24, ¶ 6. By contrast, the defendants assert that none of them received federal financial assistance during the relevant period and argue that Mann "merely makes conclusory statements" to the contrary, which are insufficient to state a claim. Doc. no. 25-1 (citing Iqbal, 556 U.S. at 678). Mann counters that his allegation regarding the defendants' receipt of federal funding is adequate, relying on Louisiana Fair Hous. Action Ctr. Inc. v. Plantation Mgmt. Co. LLC, No. CV 20-2339, 2022 WL 612719 (E.D. La. Mar. 2, 2022). He notes that the court in that case denied the defendants' motion to dismiss the plaintiff's claim under the Rehabilitation Act, holding that the plaintiff's allegation that the defendants "received substantial Federal financial assistance" was sufficient. Id. at *7.

As the defendants argue, however, the complaint in Louisiana Fair Housing Action Center Inc. alleged more detail than that court's order suggests. Indeed, the complaint in that case alleged that the defendants had "received substantial Federal financial assistance including Medicare and/or Medicaid grants and/or reimbursements," and that, on information and belief, the defendants had agreed to abide by the Rehabilitation Act as a condition of receiving such funds. Louisiana Fair Housing Action Center Inc., 2020 WL 13661050. Accordingly, the court will not rely on that case for the premise Mann asserts, that alleging a defendant "received substantial Federal financial assistance," and nothing more, is sufficient to establish the element for the purpose of a § 504 claim.

Mann's allegations on this point are plainly insufficient. See Drachman v. Bos. Sci. Corp., 258 F. Supp. 3d 207, 211 (D. Mass. 2017) ("Drachman's allegation provides sufficient factual support—an exact amount of money and the year in which it was received—to remove itself from the realm of conclusory."). Thus, Mann's claim pursuant to the Rehabilitation Act is dismissed.

The court finds, however, especially in light of Mann's pro se status, that dismissal should be without prejudice to his ability to move to amend the complaint to restate his claim under the Rehabilitation Act if he can include sufficient factual allegations to draw a reasonable inference that any defendant against whom he alleges such a claim qualified as a "program or activity receiving Federal financial assistance" during the relevant time period. His objection states that he has documentation supporting "his claim that at least one of the named defendants in this matter received federal financial assistance." Doc. no. 27 at 6. Mann shall file any such motion within 30 days of this order. It shall comply with Local Rule 15.1.

III. NHLAD

The defendants next argue that Mann's NHLAD claim must be dismissed because he failed to exhaust his administrative remedies by filing a complaint with the New Hampshire Commission for Human Rights (NHCHR) within 180 days of the alleged discrimination. Mann argues that, although he did not file an administrative complaint in New Hampshire until over five years after the alleged discrimination, he filed a complaint with the DOJ within 180 days of Camp Fatima turning him away. Because this action preserved a state law discrimination claim under the New York State Human Rights Law (NYSHR), Mann argues, and because New Hampshire law generally tolls the statute of limitations until two years after the plaintiff reaches the age of majority, the court should toll the statute of limitations under the NHLAD.

The court will assume without deciding that Mann's filing with the DOJ tolled the statute of limitations under the NYSHR. See N.Y. Exec. Law § 297(9); Leavy v. New York City Transit Auth., 814 N.Y.S.2d 891 (Sup. Ct. 2006). Mann has not set forth any legal support for his contention that preserving a claim under New York law would accomplish the same under NHLAD or that filing a complaint with the DOJ would satisfy the administrative exhaustion requirement of the NHLAD. See RSA 354-A:21.

Before bringing an NHLAD claim in court, a plaintiff must first file a complaint with the NHCHR. Samora v. UPS-SCS, No. 21-CV-0596-PB, 2021 WL 4949126, at *2 (D.N.H. Oct. 25, 2021). The plaintiff must file that administrative complaint within 180 days of the alleged discriminatory act, otherwise, the claim is time-barred. Id.; RSA 354-A:21(III). Further, a plaintiff has no more than three years from the alleged act of discrimination to bring a civil action in state court. RSA 354-A:21-a(I). Here, Mann failed to meet both the statute of limitations for filing a complaint with the NHCHR, and the additional requirement that he

commence his suit in state court within three years of the alleged discrimination. He alleges that he filed his complaint with the New Hampshire Civil Rights Unit in January 2025. First, the NHCHR and the Civil Rights Unit are not the same. Even if they were, his administrative complaint is untimely. He filed his complaint in state court that same month. As such, Mann filed both complaints over five years after the defendants refused to accept him as a camper, which places the filing of each complaint outside the limitations period.

Nor can Mann escape the administrative exhaustion and statute of limitations requirements of the NHLAD by relying on RSA 508:8, which generally tolls the statute of limitations until two years after an injured minor turns eighteen. In Steir v. Girl Scouts of U.S.A., 150 N.H. 212, 216 (2003), the New Hampshire Supreme Court held that because RSA 354-A:21(III) "provides for a more specific statute of limitations, RSA 508:8 does not apply to a claim brought on behalf of a minor pursuant to the" NHLAD.

Because Mann failed to satisfy the prerequisites for bringing a claim under the NHLAD, his claim is barred and therefore dismissed.

## IV. NHCRA

The defendants move to dismiss Mann's claim under the NHCRA on the basis that there is currently no private right of action under the statute. Mann does not specifically respond to this argument. The defendants are correct that the NHCRA does not provide a private right of action.

The NHCRA provides that "[a]ll persons have the right to engage in lawful activities and to exercise and enjoy the rights secured by" New Hampshire and federal law, free from certain types of "actual or threatened conduct . . . motivated by . . . disability." RSA 354-B:1. The

version of the statute currently in force contemplates that the Attorney General may enforce the law through "a civil action for injunctive or other appropriate equitable relief." RSA 354-B:2. This language appears to exclude any private right of action. Cf. Att'y Gen. v. Hood, 177 N.H. 176, 181 (2025) ("This is our first occasion to address the scope and framework of the Act, which authorizes civil enforcement by the Attorney General . . . ."); Bethany T. v. Raymond Sch. Dist. with Sch. Admin. Unit 33, No. 11-CV-464-SM, 2013 WL 1933756, at *3 (D.N.H. May 10, 2013) (granting the defendants' motion for summary judgment where the parties appeared to agree that "only the attorney general is authorized to bring suit under" the NHCRA).

A pending bill to amend the law confirms that no private right of action currently exists under the NHCRA. Senate Bill 139, which was referred to interim study in January 2026, if passed, would amend RSA 354-B:2 to state that "[a]ny person who has been subject to . . . the unlawful interference with . . . the rights secured under this chapter, may bring a private action in accord with this chapter." S.B. 139, 2025 Sess. (N.H. 2025) (as introduced).[4] The defendants' briefing referenced a similar bill, House Bill 641-FN. Its comments stated, "Currently, only the Attorney General has the authority to file such an action." H.B. 641-FN, 2025 Sess. (N.H. 2025) Although the bill was drafted to go into effect on January 1, 2026, id., its status is currently listed as "inexpedient to legislate."[5]

The court is accordingly persuaded that the NHCRA does not currently provide a private right of action, and Mann's claim thereunder is dismissed.

---

[4] SB139 Bill Details, https://gc.nh.gov/bill_status/legacy/bs2016/default.aspx.

[5] HB641-FN Bill Details, https://gc.nh.gov/bill_status/billinfo.aspx?id=724&inflect=2.

Conclusion

For the reasons stated above, the defendants' motion to dismiss is granted without prejudice to Mann's ability to move to amend the complaint to restate his claim under the Rehabilitation Act, if appropriate, within 30 days of this order. The court will retain jurisdiction over Mann's tort claim in Count V, which the defendants have not moved to dismiss, pending Mann's potential further action with respect to his Rehabilitation Act claim.

SO ORDERED.

Samantha D. Elliott
United States District Judge

September 29, 2026

cc: Benjamin Mann, pro se
Counsel of record.